**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IGT, | |
|        Plaintiff, | |
|    v. | Case No.  14-cv-817 |
| WMS Gaming Inc., | |
|        Defendant. | |

| | |
|---|---|
| Scientific Games Corporation, | |
|        Plaintiff, | |
|    v. | Case No.  14-cv-1530 |
| IGT, | |
|        Defendant. | |

**SCIENTIFIC GAMES CORPORATION'S AND WMS GAMING INC.'S RESPONSE TO
IGT'S MOTION TO STAY**

Brett Ingerman
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
410.580.4177

Monica L. Thompson
Raja Gaddipati
Katrina A. Hausfeld
DLA PIPER LLP (US)
203 North LaSalle Street,
Suite 1900
Chicago, IL  60601-1293
312.368.4000

Timothy C. Meece
BANNER & WITCOFF,
LTD.
10 S. Wacker Drive, Suite
3000
Chicago, IL 60606
312.463.5000

## <u>INTRODUCTION</u>

This is a straightforward breach of contract case. Scientific Games has the right under its November 12, 2012 Game Manufacturer Cashless License Agreement ("SG License") with IGT ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ When Scientific Games attempted to do just that – ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ – IGT said no. Scientific Games promptly filed suit against IGT and asked this Court to declare the parties' rights under the SG License.

IGT, citing the wrong legal standard, seeks to stay Scientific Games's lawsuit based on a completely separate and unrelated arbitration between IGT and WMS. IGT's desires aside, it is undisputed that: (1) ████████████████████████████████████; (2) Scientific Games is not a party to the WMS arbitration; (3) Scientific Games's ████████████████████ ████████████████████████████ is not at issue in the WMS arbitration, which solely concerns the WMS license agreement; and (4) ████████████████████████████ ████████████████████████████████████████████████████ ████ Given the procedural posture of this case and these undisputed facts, the proper standard for a stay is the *Colorado River* abstention doctrine, an **"extraordinary"** and **"narrow"** doctrine that may be applied only in **"exceptional circumstances"** where the arbitration "disposes of all claims" in the pending federal lawsuit. Because IGT's attempt to stay the Scientific Games lawsuit fails to meet the demanding requirements for abstention required by *Colorado River*, it should be denied.

## FACTUAL BACKGROUND

### THE SCIENTIFIC GAMES LAWSUIT

Scientific Games filed a complaint (the "Scientific Games Lawsuit"), *Scientific Games Corporation v. IGT*, No. 14-cv-1530, Compl. (N.D. Ill. Mar. 4, 2014) (Exhibit A), against IGT for declaratory judgment and breach of the SG License. (SG License) (Exhibit B). IGT ███ ████████████████████████████████████████████████████████

████████████ Since Scientific Games acquired WMS on October 18, 2013, WMS has been a wholly owned subsidiary of Scientific Games. (SG Compl. ¶ 10). Under the SG License, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ The SG License ███████████ ████████████████████████████████████████████

On February 4, 2014, Scientific Games ██████████████████████████ ████████████████████████████ (SG Compl. ¶ 15). Scientific Games ███████ ██████████████████████████████ (*Id.*). On February 5, 2014, IGT ██████████████████████████████████ (SG Compl. ¶ 16; ███ ████████ Scientific Games seeks damages for IGT's breach and a declaration that: "the SG License Agreement ████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████ (SG Compl. at Request for Relief).

IGT answered the Complaint. *Scientific Games Corporation v. IGT*, No. 14-cv-1530, Answer (N.D. Ill. April 25, 2014) (Exhibit C). Notably, IGT did not defend the Scientific Games

Lawsuit on the basis of either (1) the WMS arbitration or (2) the IGT lawsuit. *First,* IGT did not assert arbitration as an affirmative defense to Scientific Games's claims ██████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████ Moreover, IGT did not defend on the basis of ████████████████████████████████████████ the only issue in the WMS arbitration. *Id.* *Second,* IGT did not assert its "claim" in the IGT lawsuit – ██████████████████████████████████████████████████████ ██████████████████████ without using any words whatsoever to impose such a restriction – as an affirmative defense in the Scientific Games Lawsuit. *Infra* at 3-4. Instead, IGT asserted a series of counterclaims for rescission or reformation of the SG License that are not subject to an arbitration provision. *Id.* Thus, the parties' disputes as to the SG License are ripe for summary adjudication, and the WMS arbitration is in every respect irrelevant.



### THE IGT LAWSUIT

IGT also filed a complaint for declaratory judgment against WMS in connection with Scientific Games's ████████████████████████████████ (the "IGT Lawsuit"). *IGT v. WMS Gaming Inc.*, No. 14-cv-817, Compl. (N.D. Ill. Feb. 5, 2014) (Exhibit D). WMS and IGT entered into a Game Manufacturer Cashless License Agreement effective October 1, 2006 ("WMS License"). (WMS License) (Exhibit E). IGT seeks a declaration that the WMS License, executed over six years before the SG License became effective and over seven years before Scientific Games acquired WMS, somehow *sub silentio* ████████████████████████ ████████████████████████████████ *Id.* ("IGT requests . . . a declaration that ████████████████████████████████████████ ████████████████████ WMS filed a counterclaim requesting the "opposite relief"

sought by IGT in the IGT Lawsuit – a declaration that t█████████████████████████
██████████████████████████████████ *Id.*, Answer (Mar. 4, 2014) (Exhibit F).[1]

Although IGT ostensibly filed suit against WMS with respect to the WMS License, the
IGT Lawsuit is primarily based upon Scientific Games' conduct under the SG License:

> 18.     On February 4, 2014, Audree Kane ***of Scientific Games*** ████████████
> █████████████ Ms. Kane said ██████████████████████████
>
> 19.     But of these ████████ ***Scientific Games*** asked that ██████████
> █████████████ ***Scientific Games*** asked ████████████████
>
>      *     *     *
>
> 25.     IGT will suffer immediate and real harm if it is forced to ███████████
> ████████████████████████████████████ This
> action ***therefore*** represents a live controversy and warrants issuance of a
> declaration of the parties' rights.

*IGT v. WMS Gaming Inc.*, No. 14-cv-817, Compl. ¶¶ 18, 19, 25 (N.D. Ill. Feb. 5, 2014)
(emphasis added).   Thus, there is no relationship between the IGT Lawsuit and the WMS
arbitration – Scientific Games is not a party and the SG License is not at issue in that arbitration.

## THE WMS ARBITRATION

IGT filed an arbitration demand against WMS (the "WMS Arbitration").  *IGT v. WMS
Gaming Inc.*, No. 79 517 112 13, Arbitration Demand (Sept. 10, 2013) (Exhibit G.  IGT seeks t█
████████████████████████████████████████████████ Again, Scientific Games
is not a party to the WMS Arbitration, and neither the SG License nor Scientific Games's rights
are at issue in the WMS Arbitration – nor could they be since the subject matter is a license
agreement executed by WMS in 2006, seven years before WMS became a wholly owned
subsidiary of Scientific Games or had any relationship at all with Scientific Games.

---

[1]  WMS also asserted an affirmative defense of unclean hands: "IGT's antecedent breach of the [WMS] License Agreement by imposing extra-contractual conditions – ████████████████████████████████ – precludes IGT from asserting a declaratory claim against WMS for breach of the [WMS] License Agreement." *Id.*

**THE WMS LAWSUIT**

WMS filed suit against IGT because it imposed extra-contractual ███████████ ███████████████████████████████████████ under the WMS License (the "WMS Lawsuit"). *WMS Gaming Inc. v. IGT*, No. 13-cv-4788, Compl. (N.D. Ill. July 2, 2013) (Exhibit H). "The complaint primarily seeks an injunction requiring IGT to perform according to the terms of the original [WMS] license agreement." *WMS Gaming Inc.*, 2014 WL 1228341 at *2 (Ellis, J.). This Court stayed the WMS Lawsuit pending the WMS Arbitration, finding that IGT's affirmative defense of antecedent breach was subject to arbitration. *Id.* at *3.

**ARGUMENT**

**I.    THE COURT SHOULD NOT STAY THE SCIENTIFIC GAMES LAWSUIT.**

**A.    IGT Applies The Wrong Standard.**

As a threshold matter, IGT mistakenly seeks a discretionary stay pursuant to section 3 of the Federal Arbitration Act ("FAA") or the Court's inherent power to control its docket. Under binding Seventh Circuit precedent, however, IGT's motion to stay the Scientific Games Lawsuit is governed by the rules for parallel-proceeding abstention. As Judge Posner held:

> Although not expressly so limited, section 3 [of the FAA][2] assumes and the case law holds that the movant for a stay [here, IGT], in order to be entitled to a stay under the arbitration act, must be a party to the agreement to arbitrate, *as must the person sought to be stayed* [here, Scientific Games, a non-party to the arbitration agreement between IGT and WMS]. The only purpose that we can ascribe to the word "issue" in section 3 is to enable litigation to be stayed pending arbitration even if only one of the issues in the litigation is subject to an agreement to arbitrate. *The statute has no application to "issues" in cases between different parties.* Parallel proceedings, one judicial, one arbitral, are governed instead . . . by the normal rules for parallel-proceeding abstention.

---

[2] Section 3 of the FAA provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

*IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996) (*citing Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) (emphasis added). Scientific Games's acquisition of WMS does not change the result:

> But if parallel cases are pending before different tribunals, one judicial and the other arbitral, the coordination of the cases is governed by the ordinary principles of abstention, not here invoked, rather than by some special doctrine of deference to arbitrators. As the plaintiffs did not agree to arbitrate any dispute they might have with [the defendant], they cannot be forced to give up their judicial remedies . . . merely because they have an arbitrable dispute with affiliates of the defendant.

*See IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 542 (7th Cir. 1998) (Posner, J.).

Indeed, courts in the Seventh Circuit routinely apply the *Colorado River* abstention doctrine in considering whether to stay judicial claims against a non-party to an allegedly parallel arbitral proceeding. *E.g.*, *Hudson v. Deutsche Bank*, 2007 WL 1018137, at *3 (N.D. Ill. Mar. 30, 2007) (denying stay of judicial claims against non-party to allegedly parallel arbitration pursuant to *Colarado River* abstention standards); *Sarantakis v. Gruttadauria*, 2003 WL 1338087, at *6 (N.D. Ill. Mar. 17, 2003) (same). Thus, IGT's request to stay the Scientific Games Lawsuit in favor of the WMS Arbitration is governed by the *Colorado River* abstention doctrine.

### B. A Stay is Impermissible under the Governing *Colorado River* Standards.

Courts are loathe to stay a federal suit based upon a parallel proceeding:

> Abstention from the exercise of federal jurisdiction is ***the exception, not the rule***. The doctrine of abstention . . . is an ***extraordinary and narrow*** exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the ***exceptional circumstances*** where the order to the parties to repair to the state court would clearly serve an important countervailing interest. It was ***never*** a doctrine of equity that a federal court should exercise ***in its judicial discretion*** . . .

*Colorado River Water Conservation Dist.*, 424 U.S. at 813-14 (emphasis added).

Under the *Colorado River* abstention doctrine, the Court must engage in a two-part

inquiry before entering a stay. First, "[t]he **key question** is whether there is a **substantial likelihood** that the state litigation [here, the WMS Arbitration] will **dispose of all claims** presented in the federal case." *Wells Fargo Bank v. Leafs Hockey Club, Inc.*, 2013 WL 5433789, at *3 (N.D. Ill. Sept. 20, 2013) (emphasis added). "There is a **presumption against abstention**, and if there is **any substantial doubt** that the concurrent state proceeding will be an adequate vehicle for the **complete** and prompt resolution of the issues between the parties, a stay would be a **serious abuse of discretion**." *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) (emphasis added). "If no parallel . . . proceedings exist, abstention **must** be denied." *Balcor Real Estate Fin., Inc. v. Hall Fin. Group*, 1991 WL 22536, at *3 (N.D. Ill. Feb. 14, 1991).

Second, the court must evaluate ten nonexclusive factors. *Huon*, 657 F.3d at 647-48. "[A]bsent or neutral factors weigh in favor of exercising jurisdiction." *Id*. at 648. IGT's stay request fails both parts of the two-part inquiry under *Colorado River*.

### 1. The WMS Arbitration will not dispose of the Scientific Games Lawsuit.

The WMS Arbitration will not "dispose of all claims" in the Scientific Games Lawsuit – in fact, it will not dispose of ***any*** of the claims. Scientific Games seeks a declaration that ██████ ████████████████████████████████████████████████████████████ and damages for IGT's breach of the SG License ████████████████████████ IGT counterclaims for rescission or reformation of the SG License. Scientific Games and IGT did not agree ████████████████ To the contrary, they agreed ████████████████ ████████████████ In the WMS Arbitration, IGT seeks damages for WMS's ████████ ████████████████████ Scientific Games is not party to the WMS Arbitration, and the SG License (which was executed ***six years after*** the WMS License) is not at issue in that arbitration. Because the claims in the Scientific Games Lawsuit and the WMS

Arbitration are entirely distinct, there is no possibility, let alone "a substantial likelihood," that the WMS Arbitration will "dispose of all claims" in the Scientific Games Lawsuit. Having answered the "key question" for *Colorado River* abstention in the negative, the Court can end its inquiry and deny IGT's motion to stay the Scientific Games Lawsuit on this basis alone.

### 2. The *Colorado River* factors do not support a stay.

Even if this Court were to engage in the second part of the *Colorado River* abstention inquiry, IGT's motion fares no better – IGT cannot satisfy any of the ten factors:

- **whether the [arbitration panel] has assumed jurisdiction over property;**

This factor favors Scientific Games. The arbitration panel has not assumed – and cannot assume – jurisdiction over Scientific Games's property because ███████████████████ ████████████████████ and Scientific Games is not party to the WMS Arbitration.

- **the presence or absence of concurrent jurisdiction;**

This factor favors Scientific Games. The arbitration panel does not have – and cannot obtain – concurrent jurisdiction over Scientific Games because ███████████████████ ████████████████████ and Scientific Games is not party to the WMS Arbitration.

- **the order in which jurisdiction was obtained by the concurrent forums;**

This factor favors Scientific Games. The arbitration panel has never obtained – and cannot obtain – jurisdiction over Scientific Games because ███████████████████ ████████████████████ and Scientific Games is not party to the WMS Arbitration.

- **the adequacy of [arbitration] to protect the federal plaintiff's rights;**

This factor favors Scientific Games. Scientific Games, the "federal plaintiff," cannot obtain relief in the WMS Arbitration because ███████████████████████ ███████████████ and Scientific Games is not party to the WMS Arbitration.

- **the desirability of avoiding piecemeal litigation;**

This factor favors Scientific Games. As set forth above, there is no relationship between the claims, defenses, and issues in the Scientific Games Lawsuit and the WMS Arbitration. Thus, it is entirely appropriate for these two cases to proceed on separate and independent tracks.

- **the inconvenience of the federal forum;**

This factor favors Scientific Games. IGT cannot contest the convenience of this forum because IGT filed the IGT Lawsuit and its counterclaims against Scientific Games in this forum, and IGT requested (and WMS agreed) that the WMS Arbitration hearing be held in Chicago. This District is not inconvenient for IGT; rather, it is apparently, its ***favored*** forum.

- **the source of governing law, state or federal;**

This factor is neutral and therefore favors Scientific Games. The SG License ███████ ████████████████████████████ None of the arbitrators are licensed to practice law in Nevada or have any particular expertise ███████████ We respectfully submit that this Court will have no trouble evaluating contract claims ███████████

- **the relative progress of state and federal proceedings;**

This factor is neutral and therefore favors Scientific Games. Both the Scientific Games Lawsuit and the WMS Arbitration are in the nascent stages. IGT answered the Scientific Games Complaint on April 25, 2014, and the arbitration panel has yet to enter a case management order. The arbitration hearing is scheduled to begin on October 13, 2014.

- **the availability of removal;**

This factor favors Scientific Games. The WMS Arbitration cannot be "removed" to federal court, and the Scientific Games Lawsuit cannot be "removed" to the WMS Arbitration.

- **the vexatious or contrived nature of the federal claim**

This factor favors Scientific Games. Scientific Games's claims against IGT are not vexatious or contrived. Far from it. They are firmly rooted in the parties' mutually agreed-upon SG License. IGT has breached the SG License ███████████████████████████████████ ████████████████████████████████████

Thus, to the extent the Court proceeds beyond the "key question" of whether the WMS Arbitration will "dispose of all claims" in the Scientific Games Lawsuit, all ten *Colorado River* factors uniformly favor the denial of a stay.

### C. A Stay is Not Warranted under the Inapplicable *Volkswagen* Standards.

As set forth above, IGT cannot obtain a discretionary stay of the Scientific Games Lawsuit pursuant to section 3 of the FAA because there is no arbitration agreement between the parties. But even were the Court to apply section 3 of the FAA, there would be no basis for a stay. Courts evaluate three factors in considering a *Volkswagen* stay: (1) "the risk of inconsistent rulings;" (2) "the extent to which parties will be bound by the arbitrators' decision;" and (3) "the prejudice that may result from delays." *Volkswagen of Am. v. Sud's of Peoria*, 474 F.3d 966, 972 (7th Cir. 2007). None of these factors support a stay of the Scientific Games Lawsuit.

#### 1. Proceeding with the Scientific Games Lawsuit will not risk inconsistent rulings.

There is no risk of inconsistent rulings because the Scientific Games Lawsuit and the WMS Arbitration involve different parties, different claims, and different issues. ***First,*** Scientific Games is not party to the arbitration. *See GEA Group AG*, 740 F. 3d at 418-19 (holding that a *Volkswagen* stay is unwarranted because there is "slight" risk of inconsistent rulings by proceeding with claims against a non-party to arbitration). ***Second,*** the SG License is not at issue in the WMS Arbitration. The WMS Arbitration concerns ████████████████

 The Scientific

Games Lawsuit, in stark contrast, concerns Scientific Games's efforts to ███████

███████ **Third,** the WMS Arbitration cannot support an affirmative defense

to IGT's breach of the SG License. This Court stayed the WMS Lawsuit because:

> Based on the facts presently before the Court, if the arbitration panel agrees with
> IGT, it would find that WMS breached the agreement by failing to properly pay
> royalties on tags. Such a breach would excuse IGT's subsequent breaches alleged
> in the complaint.

*WMS Gaming Inc.*, 2014 WL 1228341 at *2.[3] By contrast, WMS's alleged breach of the WMS

License (the subject of the WMS Arbitration) is no defense to IGT's breach of the SG License

(the subject of the Scientific Games Lawsuit) because the WMS License and the SG License are

independent instruments ████████████████████████[4] IGT

admits as much by failing to plead an affirmative defense in the Scientific Games Lawsuit based

upon WMS's alleged breach of the WMS License. Even if IGT prevails on all claims in the

WMS Arbitration, it cannot defend the Scientific Games Lawsuit on that basis. Therefore, there

is **no** risk of inconsistent rulings, and IGT's motion fails the first *Volkswagen* factor.

> **2.    The parties to the Scientific Games Lawsuit will not be
> bound by the WMS Arbitration.**

Furthermore, the WMS Arbitration cannot resolve or narrow the claims, defenses, or

issues in the Scientific Games Lawsuit. IGT agreed that ████████████████████

---

[3]  WMS respectfully notes that, under the WMS License, ████████████████████

████████████████████████ In fact, ████████

[4]  *See Foulks v. Rhodes*, 1877 WL 4349, at *6 (Nev. 1877) ("The plaintiff, it is true, acquired his half-interest in the saw mill in consideration of executing the written agreement, the breach of which is the subject of the third defense; but the agreement to operate the mill as partners was entirely distinct from the written agreement . . . ."); *Chevron U.S.A. Inc. v. Sheikhpour*, 469 Fed. Appx. 593, 595 (9th Cir. 2012) ("If the covenants are independent, breach of one does not excuse performance of the other."); *Coplay Cement Co. v. Willis & Paul Group*, 983 F. 2d 1435, 1439 (7th Cir. 1993) ("[O]ne party's breach of contract . . . will not excuse the other from the performance due from him under a separate contract between the parties unless of course performance under the one contract is conditioned expressly on performance under the other.").

██████████████████████████████████████████████████████████

████████████████████████████████ As a result, any arbitration award ████████████████

████████████████████████ to establish *res judicata* or collateral estoppel. *See* 6 Restatement

(Second) of Judgments § 84(4) (1982) ("If the terms of an agreement to arbitrate limit the

binding effect of the award in another adjudication . . . , the extent to which the award has

conclusive effect is determined in accordance with that limitation."); *Alcantara v. Wal-Mart

Stores, Inc.*, 2014 WL 1326091, at *5 (Nev. 2014) (noting Nevada's "long-standing reliance on

the Restatement (Second) of Judgments in the issue and claim preclusion context"). Because the

WMS Arbitration is not binding upon the parties to the Scientific Games Lawsuit, a stay would

not create any judicial economies or otherwise reduce the burden of litigation on the parties or

the Court. Thus, IGT's motion also fails the second *Volkswagen* factor.

### 3. Scientific Games will be prejudiced by the delay in proceedings.

A stay will leave Scientific Games without a remedy for IGT's breach of the SG License

for, at a minimum, the duration of the WMS Arbitration. A court should not enter a stay where,

as here, the resulting delay will prejudice the plaintiff. *See Scott v. Joe Rizza Ford, Inc.*, No. 07

C 87, 2007 WL 2225904, at *2 (N.D. Ill. 2007) (denying motion to stay pending "protracted

arbitration proceedings"). IGT's breach of the SG License, ████████████████████████

████████████████████████████████████████████ results in damages of █████████

██████████████████████████████████████████████████████████

████████████████████████████████████ *See IGT vs. WMS Gaming Inc.*, No. 14-cv-817,

Compl. ¶ 16 (N.D. Ill. Feb. 5, 2014). Accordingly, the third *Volkswagen* factor not only does not

support a stay, but any delay in reaching the merits of Scientific Games's claims would, we

respectfully submit, impose, unfairly, harm on Scientific Games.

### D. A Stay is Not Warranted Under the Inapplicable *Pfizer* Standards.

As previously stated, IGT cannot obtain a discretionary stay of the Scientific Games Lawsuit pursuant to the Court's inherent discretion to control its own docket because the *Colorado River* abstention doctrine controls. In any event, the Scientific Games Lawsuit would not be subject to a stay even if the Court were to use the (inapplicable) *Pfizer* standards.

In *Pfizer*, the plaintiff filed identical patent infringement suits first in the District of Delaware and then hours later in the Northern District of Illinois. *Pfizer Inc. v. Apotex, Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). The plaintiff filed the second lawsuit to protect itself in the event it could not obtain personal jurisdiction over the defendants in Delaware. *Id.* Under Hatch-Waxman, a recipient of an Abbreviated New Drug Application ("ANDA") notice must file suit within 45 days to obtain an automatic 30 month stay of FDA approval of the ANDA. *Id.* In *Pfizer*, the Court concluded that a stay of the Illinois action pending resolution of a personal jurisdiction motion in the Delaware action was appropriate under the circumstances. *Id.*

In granting the stay, the *Pfizer* Court considered the following three factors: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *Id.* IGT fails to note the *Pfizer* Court's consideration of two additional issues: (1) "[i]f there is even a fair possibility that the stay will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity in being required to go forward;" and (2) the first-to-file rule. *Id.*

Here, unlike in *Pfizer*, these factors do not support a stay of the Scientific Games Lawsuit. **First,** Scientific Games would be prejudiced by a stay. *Supra* at 12. Unlike the short stay in *Pfizer* pending resolution of a preliminary jurisdictional motion, IGT seeks a stay of the

- 13 -

Scientific Games Lawsuit for atleast ▮▮▮▮▮ pending resolution of the WMS Arbitration on the merits. **Second,** a stay would not simplify the Scientific Games Lawsuit or preserve judicial or party resources. Unlike the **identical** lawsuits in *Pfizer*, the WMS Arbitration does not involve the same parties, the same claims, or the same issues as the Scientific Games Lawsuit. *Supra* at 7-8. Based on the "rules" of the WMS Arbitration, any arbitration award ▮▮▮▮▮ ▮▮▮▮▮ and therefore have no collateral estoppel or *res judicata* effect. *Supra* at 11-12. And, since the outcome of the WMS Arbitration ▮▮▮▮▮ pursuant to the WMS License, there is no risk of conflicting decisions. *Compare supra* at 10-12 *with Pfizer*, 640 F. Supp. 2d at 1008. **Third,** IGT has not even attempted to establish a "clear case of hardship or inequity in being required to go forward" because there is none. Otherwise, IGT would not have filed the IGT Lawsuit. **Fourth and finally,** the Scientific Games Lawsuit is the first-filed action vis-à-vis the WMS Arbitration because Scientific Games is not party to the WMS Arbitration.

### E.    Scientific Games and WMS did not Assent to a Stay Through the Parties' Related Cases Motion.

IGT makes much of Scientific Games's and WMS's joinder in the parties' related cases motion. (IGT Br. at 1, 5, 8-9). This is much ado about nothing. Local Rule 40.4 provides:

> (a) Definitions. Two or more civil cases may be related if one or more of the following conditions are met:
> (1) the cases involve the same property;
> (2) the cases involve some of the same issues of fact or law;
> (3) the cases grow out of the same transaction or occurrence; or
> (4) in class action suits, one or more of the classes involved in the cases is or are the same.

N.D. Ill. L.R. 40.4(a). Scientific Games and WMS agreed – and confirm their position – that the Scientific Games Lawsuit, the IGT Lawsuit, and the WMS Lawsuit are **related to one another** for purposes of Local Rule 40.4. Scientific Games and WMS did not – and do not – agree, however, that these three lawsuits are **parallel to the WMS Arbitration**. Simple relatedness

under Local Rule 40.4 does not satisfy the stringent *Colorado River* threshold abstention standard that the WMS Arbitration will "dispose of all claims" in the Scientific Games Lawsuit or the ten additional *Colorado River* factors. IGT has cited no cases to the contrary.

## II. THE COURT SHOULD NOT STAY THE IGT LAWSUIT.

The Court should likewise reject IGT's unusual request to stay its own lawsuit. IGT's claim and WMS's counterclaim in the IGT Lawsuit present two sides of the same coin – the parties seek a declaratory judgment as to whether or not ████████████████████ ████████████████████ These claims have not been made and therefore cannot be resolved in the WMS Arbitration. Accordingly, for essentially the same reasons set forth above with respect to the Scientific Games Lawsuit, the IGT Lawsuit is not subject to a stay under (the inapplicable standards set forth in) *Volkswagen* or *Pfizer*.

IGT asserts that a stay is warranted because of the parties' respective affirmative defenses of unclean hands based on the WMS Arbitration and the WMS Lawsuit. These affirmative defenses do not require a stay of the IGT Lawsuit as to the parties' respective *prima facie* claims. Having elected to file suit against WMS after it filed an arbitration demand against WMS, IGT cannot be heard to request a stay of its own lawsuit based upon its own preexisting arbitration. *See GEA Group AG.*, 740 F. 3d at 418-19.[5]

### CONCLUSION

For all of the foregoing reasons, Scientific Games and WMS respectfully request that the Court deny IGT's motion to stay.

---

[5] In any event, to streamline and focus the proceedings, provided that the Court allows the Scientific Games Lawsuit to proceed, Scientific Games and WMS will consent to a stay of the IGT Lawsuit.

Respectfully submitted,

SCIENTIFIC GAMES CORPORATION AND
WMS GAMING INC.


By:   s/ Monica L. Thompson
        One of Their Attorneys

Monica L. Thompson                           Brett Ingerman
Raja Gaddipati                               DLA PIPER LLP (US)
Katrina A. Hausfeld                          The Marbury Building
DLA PIPER LLP (US)                           6225 Smith Avenue
203 North LaSalle Street, Suite 1900         Baltimore, Maryland 21209
Chicago, IL  60601-1293                      410.580.4177
312.368.4000

Timothy C. Meece
Michael J. Harris
Audra C.E. Heinze
BANNER & WITCOFF, LTD.
10 S. Wacker Drive, Suite 3000
Chicago, IL 60606
312.463.5000

Dated: May 5, 2014